The next case is Number 131425, Mucand, Ltd. v. United States. I'm here for Mucand, Peter Koenig, and Mucand had an administrative dumping review by the Department of Commerce, and involving stainless steel bars, and in that review the Department of Commerce asked Mucand to report size-specific costs to the extent that it believed they were reasonable and verifiable. And Mucand was asked this several times, I guess five, and each time the response was they didn't think there was a reasonable, verifiable way to do it. And so the department applied adverse facts, but in applying adverse facts it said Mucand should have just submitted it the best way it could, which is actually a different question. And so under the law you can only apply adverse facts when you've not answered a specific question. You never did provide any cost data by size, did you? Right. And you were asked to do so five times? If believed to be reasonable and verifiable, which Mucand, who's quite adamant, was... But you said, well, I don't believe I can supply cost data, verifiable or that's reasonable, and therefore I should be excused of not supplying anything. If that's the question asked, yes. They have nine different... Are you opening the door then for people to refuse in any dumping case to supply data on the basis that it's not reasonable or verifiable? Well, normally the question asked in a dumping case is to provide it, what you have, to the best of your ability. And if that was the question, they would have answered it. In the cases, the information that you provide, it's going to be, it's subject to verification. Right. Right, so. Then the other issue is once you provide data, Commerce is going to look at it, and if it's not reasonable, they're going to tell you this isn't reasonable. You know, you've got to go back and get us some new data. Well, that was the... If the question was asked, just provide the best you've got, then they would have answered that. But that wasn't the question. But that's the way the dumping cases function. Well, they... It's up to you to provide the information and to give the backup support for it and to say, this information is reliable for these reasons. Well, that's the way dumping cases normally operate. But here, it was different because the question asked, and it was repeatedly asked the same way, was provided to the extent you believe that it's reasonable and verifiable. And McComb was quite adamant that when it has nine production processes to, under its production system, it's just not going to be able to report size-specific costs. If they had eliminated the phrase, only provided if it's reasonable and verifiable, I don't think I'd be here today. And I... Why didn't you just provide data and argue, this is all I have, I don't keep these type of records, I'm going to give you the information I have and it's reasonable for these reasons? Well, actually, in the next review, you know, here at the end, when Commerce applied adverse facts, and that's the first time they said that, just provide the data. And given that that was their position, I can tell you in the next review, which would be a public decision, they did provide the data. But in this review, the one that we're looking at, why didn't you just provide data and say, this is the best I can do and I think it's reasonable for these reasons? Because McComb was reading the question and they said they were only going to do it if it's reasonable and verifiable. I can personally tell you that I told them that. You know, as a lawyer, you probably thought, well, the lawyer must have told them that. And I told them. Your client refused. They refused. So that's why you're stuck with what you got. No, because they were following the exact questions. And all they have to do, their burden, is to answer the exact questions. They felt very uncomfortable providing information that they did not believe was reasonable or verifiable in response to a question that so asked. But as a lawyer, you knew where Commerce was, what they were getting at. And you knew, second question, third question, we better get this data to them. You don't have specific cost data in your books, but let's figure out a way to do this. How many bars did you sell over 10 meters? And how many did you sell over 5 meters? And let's divide total sales by those numbers and say that's reasonable. I fully agree with you. As a lawyer, I can tell you those were the positions I took. But that wasn't the position the department took. And that's why my advice, you can tell, was not followed. Surely they knew they'd be subject to adverse facts in that case. But the letters from the department said if you do not answer the... Adverse facts only happens when you don't answer the question asked. The question asked here was provided only if it's reasonable and verifiable. If the department had come back at one point and said just provide it, whatever you got, just provide it and we'll look at it, and they didn't, then yes, adverse facts. But here, the question asked was just provide it if it's reasonable and verifiable. And I can tell you, we had extensive discussions and they were insistent that they could not provide what they believed to be reasonable and verifiable. They didn't think they could truthfully answer the department's question. And as you're guessing from the questions, there was, as I can tell you're guessing, there was an extensive discussion between myself and McConn. Just go ahead and provide it. And they said no, that's not the question. They were very adamant about this. So at the end of the day, after your client refused to provide the information, you had adverse facts used to supply the missing gaps, which is almost all cost production data. Well, on that, that actually gets to the second issue. In this dumping case for typical, they provide 136 different data fields. The size of the bar, even on cost, is one data field and it's the least important. And it accounts for roughly, in its public record now, 2.4% of cost. So do you apply total adverse facts available when you're only missing a very narrow slice of the data provided? And I say no, because there's a statutory mandate to accurately calculate the dumping margin. But in the case of uncooperative, you impose some adverse inference. Well, the adverse inference here could be imposed on just this one data point. What should they have done instead? As I understand it, they didn't use any of your data at all. Right, that's what I'm saying, and they should have. So how should they have provided the missing data using AFA? Well, the department applies partial adverse facts available all the time. That's theoretical. Tell me what they should have done here. Well, just from what the department said, they said other respondents have provided the unit cost data difference by size. Though, as an aside, not relevant to your immediate question, they didn't have the difficulty McCombs faced with the nine production processes. But the way you could do the adverse inference is you just take the most extreme case that works against the respondent as far as the dumping margin, and you do that for the unit cost difference. That's typically how adverse inferences are used. But in this situation, the data that they were looking at is material to the entire calculation. But if you do it in an adverse way, you've covered it. Let's say a rebate. Let's say that in some of the other fields they're asking for rebate data, or any commission, or cost of vacations for laborers, that type of thing. That's one thing. But here, they're asking for cost data that's material to the entire calculation. We're talking about steel bars. Well, it's the sixth most important factor, the least important. Well, now, in the fifth supplemental questionnaire, they asked you also for rolling time and weight, and you didn't provide that. Because that was one of nine production processes, so it's not going to answer the question. No, but Commerce, by then, is trying to say, you know, we're moving ahead with the investigation. We're not getting any response here. Let's try something else. Let's ask them now for rolling time and weight. Surely they have that. Surely you know how much your bar weighs, and how long it takes to roll the bar. But you didn't answer that question either. If it's one of nine production processes, some go one way, others go another way, it doesn't lead you to any conclusion of it's reasonable and verifiable as to the unit cost differences of bar. What you're really saying is that your client ought to be able to make the judgment about what's reasonable and verifiable, and if they conclude that it's not reasonable and verifiable, that's the end of it. I would agree with you. And the reason why is because that's the specific question the department asked. And so how do you expect... If they recall that, as I mentioned, in the next review, they asked a very different question. They just said, provide the best you can. And that's what they provided. And so from all of this flows into the levy of a duty, what did they expect would follow from that relationship when it comes to the question of what duty to levy? Whether it's a complaint interest particularly. Saying this is being sold at less than reasonable value. Well, the department actually uses partial or neutral facts available all the time. For example, if they've gotten full responses to the questions, which they have here, then it goes to neutral facts available, because they have fully answered the questions. Or if you still think that they're adverse, that they haven't fully cooperated, you can apply partial adverse facts available to the specific issue. Not all 136 data points, but the one. Maybe that's what your client was shooting for. With the expectation, if we don't supply this data, which could be harmful, maybe Commerce will come up with other data that's better off. But when you go that route, you're saying, here's a company that answered the direct questions asked. And that's all it was asked to do. And now you're speculating. And it's really, I think, speculation and not substantial evidence. Maybe they had some other motive. Adverse inferences is not about the motives of the individual. It's about what they actually did. And here, what they actually did is answer the precise questions. And if you go to your speculation... Actually, I should respectfully call it that. It was a hypothetical. It's speculation as to why your client may choose to not have supplied the data. But that's a risk they take. And you did not supply the data. You were asked a number of times. You were asked different ways. It was made clear to the client that you were subject to adverse facts. But every time it was asked, it was asked exactly the same way. And when you go to the next review, and I think they realized that perhaps you don't ask the same question five times when you're asking for somebody to give it what is reasonable and verifiable. And instead you flip it and just say, just provide us what you got, the best. They got an immediate response and no adverse facts. And so if you're going to say, well, what was Mukun's motivation? I would say if you look at the totality of what happened, their motivation was literally to answer as best they could to cooperate with the department to answer the questions. And that's what they showed when the question was changed. They did it exactly as requested. They're not playing any games here. They're just answering the questions. And they were very adamant that they cannot be put in a position of providing information that is not reasonable or verifiable when that is the condition placed on the question. Okay, let's hear from the government. We'll save you some rebuttal time, Mr. Koenig. Okay. Mr. Lafgraven. May I appease the court? This case is about whether or not Mukun cooperated to the best of its ability. Let's assume they didn't. Okay? It's not just about that. Because what they're saying is even if we didn't cooperate to the best of our ability, you should still have constructed a dumping margin using our data that we did supply and using AFA to substitute for the data we didn't supply. And my recollection is that in other cases, and I think that was true in Mueller, that's what the department has done. It has, you know, generated using the cost data for other producers, data which can be plugged in and used together with the other data of the producer here. And so my question is, why didn't Commerce do that here? Why did it start using other dumping data instead of trying to construct a rate using Merckant's own data supplemented by the cost of production from other sources? Because Commerce determined that it was not feasible to do in this case. For each product, Commerce needs to make a size-specific determination as to what the sales price of that product was in the United States compared to a constructed value of the cost of producing that material in its home country. And so it needs to see all six characteristics. It can't just isolate one. So the absence of size information infects all of the data. I mean, if you're saying that a big bar of steel with the same grade and finish and shape as a small bar of steel is the exact same cost, you know, there's no cost difference between size? I don't think that's what they're saying. They're saying, okay, even accepting the proposition that you can't just assume that all sizes have the same cost data, you should have generated cost data from other producers' figures, other respondents' figures, and used that instead. Well, Commerce determined that that was not feasible for at least two reasons, and one being that the lack of this data made the other data inherently unreliable. That was a factual determination that Commerce made in this case. Made the other data inherent? Why? Why? Because it was integral to determining what the cost of the individual products were. You couldn't isolate necessarily one and say that the other information was reliable. I mean, this was one of six characteristics that Commerce identified as integral into doing its job, to making a comparison between what the difference in cost were, and to come to some sort of determination as to the difference between the cost in the United States versus the, sorry, the sales price in the United States versus the cost of production in India. And secondly, doing that wouldn't necessarily satisfy the rationale underlying the statute that permits Commerce to apply an adverse inference, because that would allow Mukon to manipulate the process, to make its determination as... But am I not correct that in other cases, Commerce has done what they're suggesting you should have done here? Actually, in other cases, in other steel cases, where another respondent has declined to submit product-specific information, Commerce has applied total adverse facts available in those cases. Well, it could be not limited to steel cases. What about the general run of anti-dumping cases? Is it not the case that Commerce has, in other instances, used cost of production data and calculated a rate by supplying that data from other producers? That might be appropriate in certain instances when there's necessarily... Does the answer, it has done it in some instances? Has Commerce applied partial facts available? Yes, Commerce has applied other partial facts available in cases that were different from this one. Okay, so what's the difference? It's different when there's, let's say, a discrete category of information. Maybe the rebates for giving to one, in connection with one sale, or to one purchaser of the product. But when it speaks to every single product, Commerce made a determination that it wasn't one discrete category of information. It actually impacted all of the rest of the information such that Commerce made a determination that it couldn't use that information without undue burden. Where did Commerce say that this is different from these other cases where it used it? Is there something in the record to that effect? Well, Commerce has an adverse facts available memo in the record at 1601 of the joint appendix. Where does it say what you're saying? Where does it specifically say it? Yeah. I'm sorry. Where does it specifically say that? Well, this is different from other cases where we've used partial facts, adverse facts available, but we can't do that here because it's not feasible or it doesn't lead to a reasonable result. Where do they address that question? Well, they address that question in, I'll tell you. Well, it starts on page 2.  It says, when it explains why... Page 2? Page 2 of the adverse facts available memo, which is 1602. 1602. Just in the preface, it explains why this information was integral to the remaining information. Well, the answer, they didn't distinguish it from the other cases? I think what Commerce did was it explained why other cases, why this was similar to another group of cases in which total adverse facts available was applied. And if you look at page, starting on page 16, there's an explanation. And then on 1619, the last paragraph starts, we have applied total AFA for similar failures to provide product-specific costs in other cases. Yeah, but I guess what I'm looking for is the determination as to why partial adverse facts available wouldn't work here. That's what I'm not seeing. Oh. I think the trial court identified in its opinion exactly where, and I can sit here and find the site for you, but the point is that the determination... You are supposed to come to the oral argument with an intimate familiarity with the record, and I do suggest that you do that, but let's not spend any more time on it here. I can explain that. Commerce did look at this situation where product-specific costs weren't applied, weren't provided, and Commerce looked at its past practice when product-specific costs weren't applied, and in those cases it made a determination that total AFA was warranted, and as in this case, Commerce found that the lack of cost information rendered the remaining data supplied by Mukon to be unreliable, and it could not be used without undue burden. The other important point that Commerce made in making this decision was that simply doing that, simply using the data provided by the respondents who complied with Commerce's request, who provided the information, to use their data would reward Mukon for withholding the very same data. That's all very interesting, but where does Commerce say that? That's the problem. That's your argument. Where does Commerce say that? We're reviewing what Commerce did. We're not reviewing the rationale that you're providing. That's the Chenery document. If you look at the supplemental appendix, it's supplemental appendix 192. And the last paragraph says, we also disagree with Mukon that an appropriate remedy would be to use the cost differences reported for different sizes by the other respondents or the average dumping margin calculated for the other respondents in this review. The explanation that's given there applies to any anti-dumping case. It doesn't explain why use of partial adverse facts available, which it does sometimes, is not appropriate here and how those other cases are distinguishable. This seems to say if you use total adverse facts available, it will prevent them from benefiting from their failure. Yet sometimes Commerce decides to use partial adverse facts available instead of total adverse facts available. It doesn't say why this case should fall into the category in which it refuses to use partial adverse facts available. Council, maybe part of the answer is in the memorandum that J1813 in Commerce addresses Mukon's failure to provide the data. It goes on and explains why in a cost of production case, and this is a CV case, which is different from a case that's not a CV case, and it requires Commerce to use different types of cost data. So J1813, the third paragraph there, can be of assistance to you and to the Court. I agree with Judge Dyck, you should know your record when you come here because these are questions that are central to your argument, and you need to come prepared and ready to back up your argument with the record. Yes, that is where Commerce does explain why it's not a specific infringement. I think we've exhausted this issue. You asked to save two minutes for your colleague. Do you still need that time? Are you going to raise a new issue or respond to what we've been discussing? I can just comment a little bit. All right, we'll come to the podium then. My name is Grace Kim, and I'm appearing on behalf of Carpenter Technology Corporation, the defendant intervener in this case. I just wanted to comment briefly on Judge Dyck's question about whether Commerce has applied partial adverse facts available in other cases where product-specific cost was not provided. I agree that Commerce has provided samples of steel cases where it has applied total adverse facts available, but this is different because it involves steel and size has a significant impact on the cost of the product as well as the price. This is not a case of, for example, plastic bags where it could be different colors and where the cost might not change. That's why Commerce, when it looks to see if a respondent has provided product-specific costs and if any one of the physical characteristics of the condoms is missing, Commerce will apply total adverse facts because this is such a vital component of the Commerce Department's dumping analysis and dumping margin calculation. It affects the sales below cost. It affects the entire cost of the product. When Commerce is trying to compare the sales price to the cost of production on a product-specific basis, it's not able to do that without the missing product-specific costs that Mukon has failed to provide here. Thank you. That's helpful. Mr. Koenig, you have a couple of minutes left. I don't know if I have much more to say, but just a few comments. In our opening brief, footnote 18, page 12, we provided some citations where the respondent did not provide all the cost fields for the various characteristics and Commerce went to partial and not full adverse facts available. These were sealed cases. I would also note Commerce saying in some cases they were constructed value. Remember, constructed value is just costs plus reasonable profit, which is usually based on the reasonable profit on home market sales. I'm not understanding how what they claim to be a distinguishing characteristic in some cases actually makes a difference. The second point, just to reemphasize, when Commerce says five times to a respondent that only provide what is reasonable and verifiable, even if the lawyer says something different, what is the respondent hearing? The respondent is hearing his counsel say that Commerce Department is wrong. That's not a very persuasive position, particularly when you're dealing with a foreign corporation. Perhaps they didn't believe that cost of production is not a verifiable number. Well, that question was never asked. If that's the situation... They asked for size differences. They asked for the variation with size. Right. I started out wrong. That whole issue could be totally avoided just by if Commerce had asked a different question like it did in the next review. Just provide the information and we'll make the judgment. Did you argue to Commerce during the proceeding before Commerce that they should use partial adverse facts available? I believe so, yes. Yes, I did. Any more questions for Mr. Koenig? No. Okay, thank you. Thank you all. The case is taken under submission. This concludes the argumentations for this morning. All rise. The Honorable Court has adjourned until tomorrow morning at 10 a.m.